### WILDE v. RICHARDSON.

COVENANTS—RESTRICTIONS—FRONTAGE—PUBLIC AND PRIVATE WAYS.
*Frontage,* as the term is used in restriction agreement relating to lots in platted subdivision and adjoining land through which a private way extended northerly from the subdivision to an east-west road, *held,* to refer to frontage on public ways and the private way, where before the restriction agreement became effective to prescribe a minimum frontage of 150 feet per lot the parties, including plaintiffs, had used the private way as an alternative method of travel in reaching the east-west road to the north, hence, lot having a frontage of 291.54' on the private way and 10' on the dedicated public way complied with the restriction.

Appeal from Oakland; Beer (William John), J. Submitted October 7, 1960. (Docket No. 47, Calendar No. 48,412.) Decided December 1, 1960.

Bill by George T. Wilde, Anne S. Wilde, and Rosemond Estates Association against Robert W. Rich-

---

REFERENCES FOR POINTS IN HEADNOTES
14 Am Jur, Covenants, Conditions and Restrictions § 263.

ardson, John C. Lichty, Frank J. Doud, and others to enjoin building operations on residential lot claimed subdivided contrary to restriction agreement. Bill dismissed. Plaintiffs appeal. Affirmed.

*George H. Goldstone,* for plaintiffs.

*Harold H. Hunter* and *Robert F. Patnales,* for defendants.

Per Curiam. The question determinative of this case is whether defendants may, consistent with that which the parties refer to as the "restriction agreement," subdivide—into a total of 3 residential lots —lot 1 of this Oakland county subdivision. Lot 1, judging from its irregular boundaries, includes an area of a little less than 4 acres. The subdivision was prepared and recorded October 25, 1950. It was platted and is known as "Rosemond Estates."

The subdivision is bounded southerly and southwesterly by Northwestern highway (a northwest-southeast superhighway); west by north-south Inkster road; north by a line extending east-west which is 857 feet south of the center line of east-west Thirteen Mile road, and east by a north-south line which is 1,334 feet east of the east line of Inkster road. The restriction agreement includes within its restrictive scope the subdivision plus the entire tract lying between the south line of Thirteen Mile road and the north line of the subdivision.

A dedicated public way, designated "Rosemond Drive," extends northerly through the subdivision from Northwestern highway. It ends with a "turn around" in the northerly end of the subdivision. The "turn around" is adjacent to said lot 1. Lot 1 is one of the 3 northernmost lots of the subdivision. A private way extends northerly from such "turn around," across a portion of said lot 1 and through

the tract above, to Thirteen Mile road. It is 60 feet in width, and was created by a series of deeds. It was originally, and now is, maintained and used by several owners of property in the area lying between the subdivision and Thirteen Mile road, and also by several owners of lots in Rosemond Estates, plaintiffs Wilde included.

Plaintiffs insist that the restriction agreement, which admittedly binds all of the present parties, prevents the subdivision of lot 1 defendants would make. They rely on the so-called frontage clause of the agreement, reading with emphasis as follows:

*"No residential lot* may be subdivided into an area less than 1 acre and in no event *shall be subdivided so as to have a frontage of less than 150 feet."*

Defendants' newly created lot (portion of lot 1) has a frontage of 291.54 feet on the private way and a frontage of 10 feet on the dedicated public way. They claim the total fully satisfies the quoted requirement.

Applying, as we should, the restrictive agreement to the *entire* territory affected thereby, it appears that the refined issue is whether the employed word "frontage" was intended to refer only to frontage on public ways, as claimed by plaintiffs, or, stating it the other way, whether the word was intended as defendants claim to refer uniformly to frontage on public ways and the private way.

The restriction agreement was not prepared and recorded until March of 1957. Long before it became effective plaintiffs Wilde placed their own construction on the word "frontage" by joining in the creation and continued use of the private way in conjunction with the dedicated public way as an alternative means of travel between their residence, in the northerly part of the subdivision, and Thirteen Mile road. Placing ourselves in the position of all

parties to the agreement when they considered and signed it, and looking at the then visible fact of unitary creation, maintenance, and use of the public way and the private way as a short cut between the subdivision and Thirteen Mile road, and noting particularly that the signatory parties did not include any word or words disclosing that "frontage" on the private way was not intended to count, we conclude that the chancellor was right in holding that plaintiffs failed to sustain the burden, assumed by their bill, of establishing that the quoted clause limits lot subdivision to areas having a frontage of 150 feet or more on public ways. Any other construction of the agreement would eliminate the protection afforded by the clause to the several owners of lots or tracts lying between the subdivision and Thirteen Mile road. Most such lots or tracts front on the private way.

This is not to say that *new* private ways may be established as a means of defeating the minimal frontage requirement. It is to say that the physical situation existing when the restriction agreement was signed leads to conclusion that the chancellor construed and applied the instrument properly as against plaintiffs' contention.

Affirmed. Costs to defendants.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, EDWARDS, KAVANAGH, and SOURIS, JJ., concurred.